“Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice” (Batson v Kentucky, 476 US 79, 87 [1986]). “The Batson framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process” (Johnson v California, 545 US 162, 172 [2005]). The first step of the Batson framework requires that a defendant set forth a prima facie case “by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose” (Batson v Kentucky, 476 US at 93-94). “This first step is not to be onerous, and ‘a defendant satisfies the requirements of Batson’s first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred’ ” (People v Jones, 63 AD3d 758, 758 [2009], quoting Johnson v California, 545 US at 170).
Once a defendant has made his or her prima facie showing of discrimination, the inquiry proceeds to the second step, where “the burden shifts and the prosecution must come forward with a race-neutral explanation for its challenged peremptory choices” (People v Childress, 81 NY2d 263, 266 [1993]; see Batson v Kentucky, 476 US at 96-97). If the prosecution cannot meet its burden of demonstrating a facially permissible explanation, an equal protection violation is established (see People v Smocum, 99 NY2d 418, 422 [2003]). However, if the prosecution meets its burden, the inference of discrimination is overcome, and the third step of the Batson inquiry requires the court to make “an ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented” (id. at 422). The ultimate burden of persuading the court that *944 the reasons are merely a pretext for intentional discrimination belongs to the defendant (id.).
Here, during the third round of voir dire, the prosecutor exercised one of her peremptory challenges to strike a prospective juror, a black woman who was a retired New York City police officer, while the prosecutor did not challenge a white male retired police officer. These facts presented by the defendant were sufficient to give rise to an inference of a discriminatory purpose in the prosecution’s use of peremptory challenges (see People v Bolling, 79 NY2d 317, 324 [1992]; People v Scott, 70 NY2d 420, 425 [1987]; People v Gray, 68 AD3d 1131, 1132 [2009]; People v Berry, 302 AD2d 536 [2003]). Contrary to the trial court’s ruling, the defendant “was not required to show a pattern of discrimination in order to meet this initial burden” (People v Gray, 68 AD3d at 1132; see Johnson v California, 545 US at 169; People v Smocum, 99 NY2d at 421-422; People v Bolling, 79 NY2d at 321).
Since the trial court should have proceeded with the Batson inquiry, the matter must be remitted to the Supreme Court, Queens County, to hear and report on that issue. We decide no other issues at this time. Skelos, J.E, Leventhal, Chambers and Lott, JJ., concur.