People v Brissett (2021 NY Slip Op 04366)





People v Brissett


2021 NY Slip Op 04366


Decided on July 14, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 14, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
SYLVIA O. HINDS-RADIX
ROBERT J. MILLER
PAUL WOOTEN, JJ.


2016-11532
 (Ind. No. 146/15)

[*1]The People of the State of New York, respondent,
v
Wesley Brissett, appellant.


Paul Skip Laisure, New York, NY (David L. Goodwin of counsel), for appellant.
Michael E. McMahon, District Attorney, Staten Island, NY (Morrie I. Kleinbart of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Richmond County (William E. Garnett, J.), rendered September 29, 2016, convicting him of criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.
ORDERED that the matter is remitted to the Supreme Court, Richmond County, before a different Justice, to hear and report on the defendant's challenge to the prosecutor's exercise of peremptory challenges against black prospective jurors in accordance herewith, and the appeal is held in abeyance in the interim. The Supreme Court, Richmond County, shall file its report with all convenient speed.
This case arises from an incident in which the defendant allegedly entered a home in Staten Island through a window and stole various items. Following a jury trial, the defendant was convicted of criminal possession of stolen property in the fifth degree.
On appeal, the defendant contends that the trial court erroneously denied his Batson challenges (see Batson v Kentucky, 476 US 79) with respect to the prosecution's exercise of peremptory challenges to exclude three black prospective jurors. During the first round of jury selection, the prosecutor exercised a peremptory challenge against a black prospective juror, without any questions having been posed to that prospective juror by either the prosecutor or defense counsel. Defense counsel requested that the prosecutor provide a race neutral reason for challenging the prospective juror, and the court replied, "[a]t this point with one juror selected there is no possible prima facie case yet."
During the second round of jury selection, the prosecutor attempted to exercise a for-cause challenge against the only black prospective juror on the panel, who indicated during questioning that his father and two cousins had been arrested and incarcerated. That prospective juror stated that the prosecution of his father and two cousins would not affect the way he listens to the case, and that he was able to be fair and open minded. Nevertheless, the prosecutor stated that he was challenging that prospective juror because "[h]e was a little vague with his responses as to the family members that he had as far as incarcerated and was kind of vague as far as it will play a role in his decision making here." Defense counsel responded that although the prospective juror [*2]was vague as to the details of what happened with his father (with whom he did not maintain contact even after the father's release from prison) and cousins, "he was very clear . . . that he could be fair." The trial court denied the prosecutor's for-cause challenge, and then the prosecutor exercised a peremptory challenge to that prospective juror. Defense counsel requested that the prosecutor provide a race-neutral reason, and the court found that the defense failed to make a prima facie showing of discrimination.
During the third and final round of jury selection, the prosecutor again exercised a peremptory challenge against the only black prospective juror on the panel, who indicated that his brother was a recently retired New York City Police Department Special Victims Division detective, and that he had experienced an attempted burglary in which someone "tried to get [his] window open." When the prosecutor exercised a peremptory challenge to that prospective juror, defense counsel made another Batson challenge, to which the trial court stated, "I am getting a little annoyed. . . . This is not the Bronx." Defense counsel asserted that the prosecutor had engaged in a pattern of exercising peremptory challenges to black prospective jurors. The court found that the defendant failed to make a prima facie showing of discrimination, since the prosecutor did not challenge three of four black prospective jurors during the first round of jury selection, and the People only challenged 50% of the six black prospective jurors in the entire pool. The court added that "[t]here was no reason for starting this black thing."
"New York courts apply the three-step test of Batson v Kentucky (476 US 79) to determine whether a party has used peremptory challenges to exclude potential jurors for an impermissible discriminatory reason" (People v Alexander, 168 AD3d 755, 755-756; see People v Smocum, 99 NY2d 418, 421-422). "The first step under Batson requires a defendant to make a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose'" (People v Chery, 117 AD3d 962, 963, quoting Batson v Kentucky, 476 US at 94). "This first step 'is not to be onerous,' and is satisfied 'by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred'" (People v Chery, 117 AD3d at 963, quoting People v Hurdle, 99 AD3d 943, 943 [internal quotation marks omitted]). "Once a defendant has made his or her prima facie showing of discrimination, the inquiry proceeds to the second step, where 'the burden shifts and the prosecution must come forward with a race-neutral explanation for its challenged peremptory choices'" (People v Hurdle, 99 AD3d at 943, quoting People v Childress, 81 NY2d 263, 266). "[I]f the prosecution meets its burden, the inference of discrimination is overcome, and the third step of the Batson inquiry requires the court to make 'an ultimate determination on the issue of discriminatory intent based on all of the facts and circumstances presented'" (People v Hurdle, 99 AD3d at 943, quoting People v Smocum, 99 NY2d at 422).
Contrary to the trial court's finding, the defendant made a prima facie showing of discrimination based upon the prosecutor's exercise of peremptory challenges to three black prospective jurors. With regard to the black prospective juror challenged by the prosecutor during the first round with a peremptory challenge, neither the prosecutor nor defense counsel asked that individual any questions, and no issues were raised to distinguish her from any other prospective jurors (see People v Pescara, 162 AD3d 1772, 1774). Moreover, the People do not contest that during the second and third rounds of jury selection, the prosecutor did not exercise peremptory challenges against several prospective jurors who were also not questioned by the prosecutor or defense counsel, and who were not black.
Furthermore, although the prosecutor did not exercise peremptory challenges to three other black prospective jurors during the first round of jury selection, the prosecutor exercised peremptory challenges to the only black prospective juror in each of the second and third rounds. With respect to the black prospective juror challenged by the prosecutor during the second round, that prospective juror unequivocally indicated that he was capable of being fair and impartial when questioned, thereby warranting the denial of the prosecutor's for-cause challenge on the ground that the prospective juror was "a little vague with his responses." Significantly, with respect to the black prospective juror challenged during the third round, that prospective juror indicated that his brother was a recently retired police detective, and that he had experienced an attempted burglary in which [*3]someone "tried to get [his] window open." Thus, that prospective juror might be expected to, if anything, favor the prosecution (see People v Gray, 68 AD3d 1131, 1132). Moreover, the prosecutor did not challenge a prospective juror who formerly worked as a civilian in the police department, and who was not black, during the second round of jury selection (see People v Hurdle, 99 AD3d at 944).
Contrary to the trial court's finding that the number of black prospective jurors to actually serve on the jury (three in total) was fairly representative of the community, as represented by the court's remark that "[t]his is not the Bronx," such consideration is "irrelevant" to the issue of whether the People's exercise of peremptory challenges was discriminatory (People v Jenkins, 75 NY2d 550, 558). Similarly, to the extent the People emphasize that three black prospective jurors served on the jury, that fact does not obviate the defendant's prima facie showing of discrimination (see People v Pescara, 162 AD3d at 1775).
Accordingly, we find that the defendant satisfied the first step of the Batson inquiry with respect to the prosecution's exercise of peremptory challenges to each of the three black prospective jurors at issue. Thus, the trial court should have proceeded with the second step and, if applicable, the third step with respect to each of the Batson challenges (see People v Chery, 117 AD3d at 963). Consequently, we hold the appeal in abeyance and remit the matter to the Supreme Court, Richmond County, to hear and report for that purpose (see id. at 963-964; People v Hurdle, 99 AD3d at 944). Under the particular circumstances of this case, we deem it appropriate to direct that such proceedings take place before a different Justice.
RIVERA, J.P., HINDS-RADIX, MILLER and WOOTEN, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court