People v Cruz (2024 NY Slip Op 03108)

People v Cruz

2024 NY Slip Op 03108

Decided on June 6, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 6, 2024

CR-23-0808
[*1]The People of the State of New York, Respondent,
v
Juan Diego Cruz, Appellant.

Calendar Date:April 24, 2024

Before:Egan Jr., J.P., Aarons, Lynch, Reynolds Fitzgerald and Powers, JJ.

Dennis B. Schlenker, Albany, for appellant.
Christopher Liberati-Conant, District Attorney, Hudson, for respondent.

Lynch, J.
Appeal from a judgment of the Supreme Court (Richard J. McNally Jr., J.), rendered December 7, 2022 in Columbia County, upon a verdict convicting defendant of the crimes of rape in the first degree, rape in the second degree and endangering the welfare of a child.
Defendant was charged by indictment with rape in the first and second degrees and endangering the welfare of a child upon allegations that he engaged in forcible sexual intercourse with a minor (hereinafter the victim). Following a jury trial, defendant was convicted as charged and sentenced to an aggregate prison term of 15 years, with five years of postrelease supervision. Defendant appeals, arguing, among other things, that Supreme Court erred in denying his Batson challenge. Because Supreme Court did not render a pretext determination under step three of the Batson inquiry as required under the circumstances, we withhold decision and remit the matter for the court to do so.
"In furtherance of the United States Supreme Court's 'unceasing efforts to eradicate racial discrimination' in the jury selection process, the Court in Batson v Kentucky . . . prescribed a now-familiar three-step test for determining whether peremptory challenges are [impermissibly] based on invidious discrimination" (People v Smocum, 99 NY2d 418, 421 [2003], quoting Batson v Kentucky, 476 US 79, 85 [1986]).
" '[T]he job of enforcing Batson rests first and foremost with the trial judges' who are supposed to 'operate at the front lines of American justice' " (People v Estwick, ___ NY3d ___, 2024 NY Slip Op 02768, *1 [May 21, 2024], quoting Flowers v Mississippi, 588 US 284, 302 [2019]). " 'At step one, the [party raising a Batson challenge] bears the burden of establishing a prima facie case of discrimination in the exercise of peremptory challenges' " (People v May, 173 AD3d 1435, 1435 [3d Dept 2019], quoting People v Hecker, 15 NY3d 625, 634 [2010], cert denied sub nom. Black v New York, 563 US 947 [2011]). "In establishing a prima facie case, there are no fixed rules for determining what evidence will give rise to an inference of discrimination" (People v Hecker, 15 NY3d at 651 [internal quotation marks, brackets and citations omitted]). "Rather, a party meets its burden when the totality of the relevant facts gives rise to an inference of discriminatory purpose" (id. [internal quotation marks and citation omitted]).
" 'Once a prima facie case of discrimination has been established, the burden shifts, at step two, to the nonmoving party to offer a facially neutral explanation for each suspect challenge. At the third step, the burden shifts back to the moving party to prove purposeful discrimination and the trial court must determine whether the proffered reasons are pretextual' " (People v May, 173 AD3d at 1435, quoting People v Hecker, 15 NY3d at 634-635). " 'While the step-two determination focuses only on the facial neutrality of the explanation, the step-three determination 'is a question of fact, focused [*2]on the credibility of the race-neutral reasons,' and it is incumbent on the moving party 'to make a record that would support a finding of pretext' at step three" (People v Acevedo, 141 AD3d 843, 846 [3d Dept 2016], quoting People v Smocum, 99 NY2d at 422; accord People v May, 173 AD3d at 1435).
During jury selection, the prosecutor exercised a peremptory challenge to prospective juror No. 193 — the only person in the venire who appeared to be of Hispanic descent, like defendant as well as the victim. Defense counsel immediately raised a Batson challenge, emphasizing that this juror was "a person of color" and "didn't say a word" during voir dire. Without commenting on the sufficiency of this step-one proffer, Supreme Court directly asked the prosecutor to place his race-neutral reasons on the record. The prosecutor obliged, explaining that he was challenging the juror because "[h]e seemed to be meek. He was laughing . . . inappropriately," and stating, "I think, . . . this is a serious case. And I don't know if he can take this seriously." The prosecutor disputed the premise that this juror was the only person of color in the venire, pointing to two other jurors he believed also fit that category. Thereafter, defense counsel again emphasized that the prosecutor did not ask juror No. 193 a single question during voir dire and that this juror "didn't say one thing." Given these circumstances, defense counsel argued that "to come in and to challenge [this juror] clearly invites a good faith Batson challenge." Supreme Court then inquired of counsel for the second time, "[a]nd how do I proceed? . . . Educate me. What is the second level, and what's the third level?" Defense counsel endeavored to respond, but after explaining steps one and two Supreme Court stated "I've heard enough" and granted the People's peremptory challenge, finding that defense counsel failed to satisfy his prima facie burden at step one and, therefore, "[w]e don't get to the second level." Although the court acknowledged that prospective juror No. 193 "appear[ed] to be the only juror that is of, perhaps, Hispanic descent," it did "not believe that there[ ] [was] any systemic exclusion of . . . [p]eople of either Hispanic [descent] or of color." Defense counsel duly noted his objection.
The prosecutor, in turn, asked Supreme Court — "for the sake of safety" — to again put on the record his race-neutral reasons for the peremptory challenge. He was permitted to do so and reiterated that this juror "was laughing and didn't appear to be taking this seriously." The prosecutor further opined that he "didn't think [the juror] had the premarity [sic] to be able to be on the jury." Supreme Court stated that this juror was "affable in regards to his presentation of pedigree information at the end of the voir dire [conducted by the court]," noting that "there were no other questions asked." The court adhered to its prior ruling finding that there was no "systemic exclusion of people." Defense [*3]counsel protested that there was an insufficient record to make that determination but Supreme Court denied his application to have the juror brought back in and "questioned about his attitude towards the case."
Supreme Court erred in several respects. The foregoing demonstrates that the Batson procedure was not followed in sequence (see People v Smocum, 99 NY3d at 422). Initially, the court erroneously concluded that defendant did not meet his prima facie burden at step one. "[T]he first-step burden in a Batson challenge is not intended to be onerous" and is met when "the totality of the relevant facts gives rise to an inference of discriminatory purpose" (People v Hecker, 15 NY3d at 651 [internal quotation marks and citation omitted]). Defendant satisfied this burden by noting that a juror of color — who, according to the court, appeared to be the only juror of the same racial group as defendant — was being challenged despite the fact that the prosecutor had not asked him a single question (see People v Pescara, 162 AD3d 1772, 1774 [4th Dept 2018]). This juror had previously provided an appropriate response to the court's questioning about pedigree information and was, in the court's words, "affable" when doing so (see People v Davis, 153 AD3d 1631, 1632 [4th Dept 2017]). By referencing the plural "people" in finding no systemic exclusion when there was only one peremptory challenge at issue, it appears the court did not recognize that "a prima facie case may be made based on the peremptory challenge of a single juror that gives rise to an inference of discrimination" (People v Smocum, 99 NY2d at 422; see People v Bridgeforth, 28 NY3d 567, 573 n 1 [2016] ["A 'pattern' of discrimination is not always required, as Batson is applicable where the challenge is directed at a single juror of a cognizable group"]). We conclude that, on this record, there was a basis "to infer that the People exercised the peremptory challenge in a discriminatory manner" and defendant satisfied his prima facie burden at step one (People v Davis, 153 AD3d at 1632; see People v Pescara, 162 AD3d at 1774). Accordingly, Supreme Court should have determined whether the People's step two explanation was pretextual or not, taking due account of defense counsel's response.
To that end, whether the People satisfied their burden to provide race-neutral reasons for the peremptory challenge is a pure question of law that can be decided by this Court in the first instance (see People v Allen, 86 NY2d 101, 109 [1995]). "A race-neutral reason naturally means an explanation based on something other than the race of the juror" (People v Hecker, 15 NY3d at 655 [internal quotation marks and citation omitted]). In our view, the People's challenge to the juror's demeanor constituted a facially race-neutral explanation for the peremptory challenge (see People v Smocum, 99 NY2d at 423). The burden thus shifted back to defendant to establish that the prosecutor's explanation was, in reality, [*4]a pretext for discrimination. In that regard, defense counsel emphasized again that the juror was "the single person of color on this panel" and "had not been asked a single question." He also indicated that the prosecutor's proffered rationale was disingenuous, responding to the prosecutor's rhetorical question, "So I can't kick any person of color" off the jury panel, in the following manner: "You can. If you can tell us other than you think he was laughing at something." Notwithstanding this attempt to establish pretext,[FN1] Supreme Court never ruled on this ultimate issue.
The People's contention that the trial court "applied the appropriate three-part test" is refuted by the record (compare People v Taylor, 185 AD3d 724, 728 [2d Dept 2020]). As noted above, Supreme Court explicitly stated that defendant had not satisfied his prima facie burden at step one and declined to proceed to step two. "Although there are cases in which [it has been] held that the trial court, by ultimately denying a Batson claim, implicitly determined that the race-neutral explanation offered by the People was not pretextual," this is not one of them (People v Pescara, 162 AD3d at 1775). This record confirms that the court made only a step one decision, and did not make any determination on the issue of pretext, implicit or otherwise (compare People v Cunningham, 21 AD3d 746, 747 [1st Dept 2005], lv dismissed 6 NY3d 755 [2006]).
This is a critical error because "[a] trial court that resolves a Batson challenge without proceeding to [the] third step 'falls short of [providing] a meaningful inquiry into the question of discrimination' " (People v Acevedo, 141 AD3d at 850 [McCarthy, J., concurring], quoting People v Smocum, 99 NY2d at 423 [the third step of the analysis "requires the trial court to make an ultimate determination on the issue of discriminatory intent" (emphasis added)]; see People v Hecker, 15 NY3d at 634-635 ["the trial court must determine whether the proffered reasons are pretextual" (internal quotation marks and citation omitted)]; People v Payne, 88 NY2d 172, 183 [1996] [the trial judge "must in all cases make a step three pretext determination" (emphasis added)]; see also Matter of Robar v LaBuda, 84 AD3d 129, 136 [3d Dept 2011] ["the court never ruled on the dispositive issue of whether defense counsel's stated reasons for striking these disputed potential jurors were a pretext for impermissible discrimination, a credibility determination that is a prerequisite to any Batson ruling"]). We are unable to do so in the first instance since the issue of pretext "is a question of fact, focused on the credibility of the race-neutral reasons" (People v Smocum, 99 NY2d 422; see People v Hecker, 15 NY3d at 656; People v Morgan, 75 AD3d 1050, 1052-1053 [4th Dept 2010], lv denied 15 NY3d 894 [2010]). Although the surrounding circumstances, as set forth in the record, are certainly relevant to the pretext analysis, the trial court plays "a pivotal role" in this regard [*5]by assessing "the prosecutor's credibility" (Snyder v Louisiana, 552 US 472, 477 [2008] ["the best evidence of discriminatory intent often will be the demeanor of the attorney who exercises the challenge" (internal quotation marks, brackets and citation omitted)]). The trial court is vested with "broad discretion" on this issue and its "determination whether a proffered race-neutral reason is pretextual is accorded great deference on appeal" (People v Hecker, 15 NY3d at 656 [internal quotation marks and citations omitted]). Such "[d]eference is necessary because a reviewing court, which analyzes only the transcripts from voir dire, is not as well positioned as the trial court is to make credibility determinations" (id. at 656-657 [internal quotation marks, emphasis and citation omitted]).
The trial court's role in the analysis is particularly important where, as here, the race-neutral reasons proffered by the People were based upon the challenged juror's demeanor — an issue that Supreme Court was in a unique position to verify and which is not clearly established in the appellate record (see Snyder v Louisiana, 552 US at 477 ["race-neutral reasons for peremptory challenges often invoke a juror's demeanor (e.g., nervousness, inattention), making the trial court's firsthand observations of even greater importance. In this situation, the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor"]; People v Acevedo, 141 AD3d at 850 [McCarthy, J., concurring] [same]). Given the failure to abide by the Batson protocol, we withhold decision and remit this case to Supreme Court to enable the trial judge who presided over this matter to determine "whether the race-neutral reason proffered by [the People] was pretextual" (People v Payne, 88 NY2d at 187).
Egan Jr., J.P., Aarons, Reynolds Fitzgerald and Powers, JJ., concur.
ORDERED that the decision is withheld and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.

Footnotes

Footnote 1: Although defense counsel did not expressly argue that the prosecutor's facially race-neutral reasons were pretextual, it is clear that he was attempting to make such showing.